UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 25-____ |
| | : | |
| v. | : | |
| | : | |
| **YUSUF AKOLL** | : | Violation: |
| | : | 18 U.S.C. § 1001 |
| Defendant. | : | (False Statements) |
| | : | |

## INFORMATION

The United States charges:

### COUNT ONE

At all times relevant to this Information, except as otherwise indicated:

1.  The defendant, **YUSUF AKOLL** ("**AKOLL**"), worked as a Senior Procurement Contract Specialist at the U.S. Agency for International Development. On or around November 29, 2020, **AKOLL** registered the formation of SAQ Naagode Consulting LLC ("SAQ Naagode") with the Commonwealth of Virginia State Corporation Commission.

*Paycheck Protection Program*

2.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on or around March 27, 2020, to provide emergency financial assistance to Americans suffering economic harms from the COVID-19 pandemic. To achieve this goal, the CARES Act established new temporary programs and expanded existing programs administered by the U.S. Small Business Administration ("SBA"), which is an agency within the executive branch of the United States government and has its headquarters in Washington, D.C.

3.  One form of assistance provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The PPP was overseen by the

SBA, which had authority over all PPP loans. Individual PPP loans, however, were issued by approved private lenders, who received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

4.  To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business to an eligible private lender, such as a federally insured bank or an SBA-approved non-bank lender. The PPP loan application required the applicant to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. One such certification required the applicant to affirm that the PPP loan funds would "be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities," among other "expenditures as specific under the Paycheck Protection Program Rules." The applicant also was required to acknowledge that "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud." The applicant was further required to state, among other things, the business's average monthly payroll expenses, and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

5.  After a PPP loan application was submitted, it was reviewed and processed, in the first instance, by the participating lender approved by the SBA. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. The SBA guaranteed the loans funded by the lender for the PPP loan. In the course of processing the PPP loan, the lender transmitted data from the loan application to the SBA, including information about the borrower, the total amount of the loan, and the identified number of employees. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for

forgiveness if, among other things, the business spent the loan proceeds on eligible expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

### *AKOLL's False Statements to Obtain PPP Loans*

6. From at least in or around March 2021, and continuing through at least in or around August 2021, **AKOLL,** in a matter within the jurisdiction of the SBA, an agency within the executive branch of the United States government, did knowingly and willfully make, or caused to be made, materially false, fictitious, and fraudulent statements and representations, in that **AKOLL** filed, and caused the filing of, materially false applications and requests for PPP loans that resulted in **AKOLL** receiving two PPP loans totaling approximately $16,666 that he was not entitled to receive.

7. On or around April 1, 2021, and again on or around April 16, 2021, **AKOLL** submitted PPP loan applications to a non-bank small business lender (Lender #1), which was located in Lake Mary, Florida, to obtain approximately $16,666, by means of false, fictitious, and fraudulent statements and representations.

8. In both PPP applications that **AKOLL** submitted to Lender #1, he inflated the gross yearly income of SAQ Naagode in order to obtain more money from the PPP loan from Lender #1 or SBA. Specifically, **AKOLL** submitted loan applications that falsely stated SAQ Naagode had a gross income in 2019 of $40,000 when, in fact, it had no gross income that year. This statement regarding SAQ Naagode's gross income in each loan application was materially false, **AKOLL** knew each statement was materially false, and **AKOLL** submitted these materially false statements to Lender #1 in order to receive each PPP loan.

9. In each of his PPP loan applications, **AKOLL** also falsely stated that his company, SAQ Naagode, was established on January 1, 2020. Only entities that were in operation on

February 15, 2020, could qualify for a PPP loan. Records from the Commonwealth of Virginia State Corporation Commission reflect that **AKOLL** registered the formation of SAQ Naagode on or around November 29, 2020, and therefore would not have qualified for a PPP loan.

10. As a result of **AKOLL**'s materially false statements, Lender #1 approved both of **AKOLL**'s PPP applications and funded the loans. In connection with **AKOLL**'s first PPP loan, on or around April 16, 2021, Lender #1 deposited via interstate wire transmission $8,333 into a business checking account (ending x2779) that was controlled by **AKOLL**.

11. Also as a result of **AKOLL**'s materially false statements, in connection with **AKOLL**'s second PPP loan, on or around May 4, 2021, Lender #1 deposited via interstate wire transmission $8,333 into a business checking account (ending x2779) that was controlled by **AKOLL**.

12. **AKOLL** received, in total, $16,666 from Lender #1 for the two PPP loans and did not use the funds for eligible expenses as specified by the SBA under the PPP loan program.

13. On or around August 24, 2021, **AKOLL** submitted to the SBA a "PPP Loan Forgiveness Application" for his two PPP loans. As part of the loan forgiveness application, **AKOLL** falsely affirmed that he had complied with all requirements of the PPP loan program, including the eligible uses of PPP loan proceeds. In fact, **AKOLL** had not complied with the requirements of the PPP loan program and had misspent the PPP funds that he received due to the materially false statements on his PPP loan applications.

**(False Statements in violation of Title 18, United States Code, Section 1001)**

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: _____/s/_____
Matthew F. Sullivan (NY Bar No. 4785952)
Sara A. Hallmark (MD Bar No. 1112130399)
Trial Attorneys
1400 New York Avenue NW
Washington, DC 20530
(202) 578-6583 (Sullivan)
(202) 514-2686 (Hallmark)
matthew.sullivan2@usdoj.gov
sara.hallmark2@usdoj.gov